IN THE UNITED STATE DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| ESTATE OF GREGORY MARTIN HOLSAPPLE ) <br> By and through, FRANCES GAYLE JONES, ) <br> Administrator ) <br>   ) <br> Plaintiff, ) <br> Vs. ) <br>   ) NO._____ <br> RHEA COUNTY, TENNESSEE, operating the ) <br> Rhea County Sheriff's Department, MIKE NEAL, ) <br> Individually and in his capacity as Sheriff of Rhea County, ) <br> DEPUTY JESSE AILEY, individually and in his capacity ) <br> As Deputy with the Rhea County Sheriff's Department, ) <br> Sgt. SHELLEY VANZILLE , individually and in her ) <br> Capacity as Correction Officer for the Rhea County ) <br> Sheriff's Department, DAKOTA EVANS, individually ) <br> And in his capacity as Correction Officer for the Rhea ) <br> County Sheriff's Department, JESSE GOINS, ) <br> Individually and in his capacity as Corrections Officer ) <br> For the Rhea County Sheriff's Department, ) <br> JUDY WRIGHT, individually and in her capacity as ) <br> Corrections Officer for the Rhea County Sheriff's ) <br> Department, CORRECTIONS OFFICER DOES, One ) <br> Through Five, individually and in their capacity as ) <br> Employees of the Rhea County Sheriff's Department. ) <br>   ) <br>   ) <br> Defendants. ) | Jury Trial Demanded |

## COMPLAINT

Plaintiff, FRANCES GAYLE JONES, As Administrator with authority for the heirs at law of GREGORY MARTIN HOLSAPPLE, deceased, by and through undersigned counsel, for cause of action state as follows:

1. This actions arises under the United States Constitution, particularly under the provision of the Sixth, Eighth, Ninth, and Fourteenth Amendments to the Constitution of the United

Constitution, including Article I, Sections 8, 9, 13, 16, and 32 and Tennessee State Law. Plaintiffs bring this suit, in part, pursuant to *42 U.S.C. § 1983.* This Court has jurisdiction over this case pursuant to *28 U.S.C. 1331* and *28 U.S.C § 1367* and pendent jurisdiction to adjudicate claims arising under the laws oif the State of Tennessee including claims under *T.C.A § 20-5-101*, et seq, *T.C.A. § 29-20-101*, et seq. and *T.C.A. § 41-4-101*, et seq. Venue is proper in the Eastern Division of Tennessee under *U.S.C § 1391(b) and (c)* because the matters occurred within this District and the Defendants operate and reside within this district.

## PARTIES

1. Plaintiff, Estate of GREGORY MARTIN HOLSAPPLE, is represented by the Administrator FRANCES GAYLE JONES duly appointed by the Bledsoe County Chancery Court # 2019-P-1156.

2. Defendant, RHEA COUNTY is a political subdivision of the State of Tennessee and among its other functions operates and maintains a law enforcement agency know as the Rhea County Sheriff's Department (RCSD). Rhea County is under a duty to run its policing activities in a lawful manner so as to preserve the peace of Rhea County and to preserve to its citizens the rights, privileges and immunities guaranteed and secured to them by the constitution and laws of the United States and the State of Tennessee. Rhea County has established or delegated to the Sheriff of Rhea County, the responsibility for establishing and implementing policies, practices, procedures, and customs, used by law enforcement offices employed by the Rhea County Sheriff's Department regarding arrests and detainment of an inmate. At all times, Rhea County was acting under the color of State law.

3. Defendant, MIKE NEAL, is the duly elected Sheriff and chief policy maker for Rhea County. He is sued in his individual and official capacity as Sheriff of Rhea County. At all times relevant herein, he was acting under color of state law.

4. Defendant, DEPUTY JESSE AILEY, was a deputy Sheriff with the Rhea County Sheriff's Department. He is sued in his individual and official capacity and at all relevant times herein was acting under the color of state law.

5. Upon information and belief, Defendant, Sgt. SHELLEY VANZILLE was a correctional officer with the Rhea County Sheriff's Department. She is sued in her individual and official capacity and at all relevant times herein was acting under the color of state law.

6. Upon information and belief, Defendant, DAKOTA EVANS was a correctional officer with the Rhea County Sheriff's Department. He is sued in his individual and official capacity and at all relevant times herein was acting under the color of state law.

7. Upon information and belief, Defendant, JESSE GOINS was a correctional officer with the Rhea County Sheriff's Department. He is sued in his individual and official capacity and at all relevant times herein was acting under the color of state law.

8. Upon information and belief, Defendant, JUDY WRIGHT was a correctional officer with the Rhea County Sheriff's Department. She is sued in her individual and official capacity and at all relevant times herein was acting under the color of state law.

9. Upon information and belief, Defendants, CORRECTIONS OFFICER DOES, One Through Five are not known at this time; however are being sued in their individual and official capacity and at all relevant times herein was acting under the color of state law.\

## GENERAL ALLEGATIONS AND FACTS

10. On or about May 28, 2019 at 10:44 a.m. the Decedent, GREGORY MARTIN HOLSAPPLE was nude in the roadway of Rhea County when DEPUTY JESSE AILEY answered a 911 call.

11. That at the time that Deputy Jesse Ailey arrived the Decedent, Gregory Martin Holsapple was in the roadway in Rhea County nude when Deputy Ailey took the Decedent into custody and transported him to the Rhea County Medical Center where the Decedent was evaluated and cleared.

12. That during the transport the Decedent was gave a false identity and told the Deputy that voices were telling him to do pure things.

13. That Rhea County Medical Center reported that the Decedent was Schizophrenic and that the Decedent's drug screen was negative.

14. That Rhea County Medical Center made the Deputy aware that the Decedent needed to be evaluated by the mobile Crises Team.

15. That Deputy Jesse Ailey then transported the Decedent to Rhea County Sheriff's Department for the criminal charge of Public Indecency.

16. That at 1:56 p.m. Deputy Jesse Ailey arrived at the Rhea County Sheriff's Department with the Decedent.

17. That the Decedent was placed in a holding cell with a small window covered with what appeared to be a piece of paper causing no clear view of the Decedent at all times.

18. That Deputy Jesse Ailey knew and was aware that the Decedent had mental issues and was not under the influence of any narcotics which would alter his behavior.

19. That during the period of time that the Decedent was in the holding room multiple Corrections officers would lift the paper on the window to check on the Decedent.

20. That the Decedent continued to yell, was agitated, and refused to wear the gown and shoes provided to him by the Rhea County Sheriff's Department.

21. That at approximately 5:05 p.m. Corrections Office, Shelley Vanzille brought a food tray with a Styrofoam cup to the Decedent in his holding cell.

22. That at approximately 5:34 p.m. the mobile crises team representative, Jacqueline Rush attempted to evaluate the Decedent with Defendants, Correction Officer Does standing around the Decedent who was placed in a chair nude holding the Decedent in place by holding him down.

23. That the Client DSM diagnosis was Schizophrenia, and drug induced akathisia with the mobile crises representative issuing a Certificate of Need for the Decedent to be transferred to Moccasin Bend Mental Health Facility.

24. That the Decedent was returned to the holding cell where it is believed that he tried to eat the Styrofoam cup.

25. That unidentified Correction Officer Doe instructed the Decedent to remove the items from his mouth.

26. The Decedent became combative and was removed from the holding cell and placed in a restraint chair.

27. That Corrections Officer Dakota Evans tried to remove the Styrofoam from the Decedents mouth.

28. That proper medical protocol is never to try to remove a lodged object with fingers as this causes the lodged item to become more lodged cutting off the airway of the subject.

29. That the Decedent was put in a restraint chair while Correction Officers Dakota Evans and Jesse Goins began to beat on the Decedent's chest and continued to stick their fingers in the Decedent's mouth to remove the object blocking his airway.

30. That improper protocol is to stick fingers down the throat of a choking victim for fear of pushing the object further down the airway or breaking the object into smaller pieces causing even more blockage.

31. That the Decedent's lips turned blue, lost a pulse and the Correction Officers Dakota Evans and Jesse Goins removed the Decedent from the restraint chair and placed him on the floor to begin CPR.

32. That Correction Officer Judy Wright called for Rhea County EMS.

33. That at approximately 6:30 p.m. while restrained and choking the corrections Officers leans the Decedent forward and attempts the Heimlich the holds the bac k of the Decedents neck and punches him in the stomach.

34. That at that time the Decedent stiffens while the corrections Office pushes on his stomach.

35. That the Correction Officers hit, punched, dug into the mouth of the Decedent all while he was choking and restrained.

36. That approximately Seven minutes later the Decedent is unconscious the Corrections Officers remove the Decedent from the restraint chair, lying him on the floor attempting CPR on the Decedent.

37. That the Decedent had lost consciousness and had no pulse when the Rhea County Emergency Medical personnel arrived.

38. That the Rhea County EMS Scott Miller used Magill Forceps in an attempt to remove the lodged piece(s) of Styrofoam from the Decedents airway.

39. That the Rhea County EMS, Donnie Harwood removed several smaller pieces of consisting of 1" square and 2 larger folded pieces that appeared to be mot of the Styrofoam cup.

40. That there was blood on the cup pieces according to the Rhea County EMS report.

41. The Decedent was incubated with 7.5 endotracheal tube.

42. That during the autopsy the Medical Examiner found additional Styrofoam inside the Decedent's airway extending into the posterior oropharynx..

43. That the Decedent was transferred to Rhea County Medical Center and then transferred to Memorial Healthcare Center.

44. That during hospitalization the Decedent developed multi organ failure and was removed from life support in which the Decedent passed away.

45. Each of these acts or omissions, singular or in combination with others constitutes violations of the United States and Tennessee Constitutions as identified in Paragraph 4, negligence and negligence per se and /or recklessness which proximately caused the occurrence making the basis of this action and Gregory Martin Holsapple's injuries, death, and resulting damages.

## CAUSES OF ACTION AND DAMAGES

46. Plaintiffs hereby incorporate One through Forty Five recited above by reference as if recited verbatim herein.

47. Plaintiff asserts that Correction Officers Dakota Evans and Jesse Goins were not properly trained in monitoring and evaluating mentally ill inmates.

48. Plaintiff asserts that Correction Officers Dakota Evans and Jesse Goins were not properly trained in administering medical attention to mentally ill inmates.

49. Plaintiff asserts that Correction Officer Shelley Vanzille's actions were negligent and unreasonable in giving a mentally ill inmate Styrofoam.

50. Plaintiff asserts that Rhea County Sheriff, Mike Neal is responsible for the training all officers in all departments, including but not limited to the Corrections Officers in the proper protocol for the monitoring, medical training and treatment of the mentally ill inmates in accordance with the statutes, ordinances, regulations, customs, and usage of all Rhea County Sheriff's Department, the County of Rhea, and the State of Tennessee.

51. That the Plaintiff asserts that the Defendants failed to properly hire, instruct, supervise, and control the deputies and officers in his employ particularly with regard to the monitoring, treatment and medical training of the mentally ill.

52. That all named Defendants directly or indirectly, under the color of law, contributed to, failed to prevent, and/or approved or ratified the use of the unreasonable and/or excessive treatment, failure to monitor, and improper medical treatment inflicted upon the Decedent.

53. That the conduct of the Defendants as described above deprived the Decedent of his right to be secure in his person against negligence, lack of treatment, and improper treatment as guaranteed to Decedent under the Fourteenth Amendment of the United States Constitution and Tennessee State Constitution, including Article I, Sections 8, 9, 13, 16, and 32.

54. That the conduct of the Defendants as described above deprived the Decedent of his right not to be deprived of life, liberty, and property without due process of law and to be

accorded the equal protection of the laws as guaranteed to Decedent under the Fourteenth Amendment of the United States Constitution and Tennessee State Constitution, including Article I, Sections 8, 9, 13, 16, and 32.

55. That the conduct of the Defendants as described above deprived the Decedent of his right to be secure in his person against negligence, lack of treatment, and improper treatment pursuant to Tennessee Code Annotated §41-4-140 (a)(4).

56. That the conduct of the Defendants as described above deprived the Decedent of his right to be secure in his person against negligence, lack of treatment, and improper treatment as guaranteed to Decedent under the Ninth Amendment of the United States Constitution.

57. Plaintiff adopt the facts as stated previously in this Complaint and would sue Defendants under the Governmental Tort Liability Act, Tenn. Code Ann. §29-20-101, et. Seq., pursuant to the following causes of action:

    a. Negligence and negligence per se.

    b. Failure to provide appropriate treatment, lack of treatment, and improper treatment.

    c. Outrageous conduct under the laws of the State of Tennessee.

58. As a direct, legal and proximate result of the negligence and gross negligence and/or reckless conduct of the Defendants as described herein, GREGORY MARTIN HOLSAPPLE suffered the following injuries and damages.

    a. Physical pain and mental suffering;

    b. Funeral bills and expenses;

    c. Conscious pain, fright, shock and mental anguish;

    d. Loss of earning capacity and lost wages, past, present and future;

e. Loss of life expectancy;

   f. Loss of enjoyment of life;

   g. Death;

   h. Loss of enjoyment in being there for his family.

59. As a direct, legal and proximate result of the negligence of the Defendants as described above, or per gross negligence of same the Plaintiff and the heirs of the Decedent, suffered the loss of love, society, companionship, care, comfort, and support of their Son Gregory Martin Holsapple due to his injuries and wrongful death.

60. At the time of his Death, Gregory Martin Holsapple was Thirty One (31) years of age and had a reasonable life expectancy of Seventy Nine (79) years.

61. The Death of Gregory Holsapple was a direct and proximate result of the treatment and negligence of the Defendants causing his death on May 28, 2019..

62. In addition to actual damages, Plaintiff's seek exemplary damages against Defendants because Defendants acts, inacts, and/or omissions proximately caused the death of Gregory Martin Holsapple and constitute recklessness. Defendant's conduct constitutes recklessness and gross negligence because of their acts, inacts, and/or omissions despite their actual subjective awareness of the conscious indifference to the rights, safety, and welfare of others. Accordingly, Plaintiffs seek exemplary damages under Tennessee State law.

63. As a direct and proximate result of the recklessness of the Defendants, Plaintiffs are entitled to punitive damages in accordance with Tennessee State law.

64. That the Plaintiffs be allowed to amend the Complaint should it become necessary and needed after discovery has been completed.

WHEREFORE, PLAINTIFFS PRAY AS FOLLOWS:

1. For actual and compensatory damages in an amount not to exceed $5,000,000.00.

2. For punitive damages as provided for by Federal and State law in an amount not to exceed $5,000,000.00.

3. For all attorneys' fees and costs associated with this action, pursuant to 42 U.S.C. §1988 et. seq. and other relevant authority.

4. For a jury to try this cause.

5. For such other and further relief to which the Court may deem just and proper.

Respectfully submitted this the 26th day of May, 2020

_____
RANDAL R. BOSTON, BPR # 022025
Attorney for the Plaintiff
60 N. Main Street
Crossville, TN 38555
(931) 707-7701

_____
HOWARD L. UPCHURCH, BPR #010145
Attorney for the Plaintiff
P. O. Box 381
Pikeville, Tennessee, 37367
(423) 447-2903

## VERIFICATION

**STATE OF TENNESSEE**
COUNTY OF Cumberland

    **FRANCES GAYLE JONES**, as next of kin and AS Administrator of the Estate of Gregory Martin Holsapple, first being duly sworn, makes an oath that the statements made in the foregoing Complaint are true as of her own knowledge and belief and that the Complaint is not made out of levity or in collusion with the Defendants, but in sincerity and truth for the causes mentioned in the Complaint and that **the heirs of the Decedent** are justly entitled to the relief herein sought.

*Frances Gayle Jones*
**FRANCES GAYLE JONES,**
ADMINISTRATOR

Sworn to and subscribed before me this __20__ day of __May__, 2020.

*Teresa Boston*
NOTARY PUBLIC

My commission expires: 12-6-21