UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ESTATE OF GREGORY MARTIN HOLSAPPLE, by and through PEGGY SMITH and RENEE HOLMES, Administrators<br><br>*Plaintiffs,*<br><br>v.<br><br>RHEA COUNTY, TENNESSEE, et al.,<br><br>*Defendant.* | No. 1:20-CV-133<br><br>Judge Collier<br>Magistrate Judge Steger |

### **MEMORANDUM**

Before the Court is a motion for summary judgment by Defendants Dakota Evans (Official Capacity as Correction Officer for the Rhea County Sheriff's Department), Dakota Evans (individually), Jesse Goins (Official Capacity as a Correction Officer for the Rhea County Sheriff's Department), Jesse Goins (individually), and Rhea County, Tennessee ("Rhea County") (hereinafter collectively referred to as "Defendants"). (Doc. 59.) Plaintiffs have failed to respond to Defendants' motion and the time to do so has expired. For the reasons articulated below, the Court will **GRANT** Defendants' motion for summary judgment (Doc. 59).

I. **BACKGROUND**[1]

On May 28, 2019, Gregory Martin Holsapple ("Decedent") was nude in a roadway of Rhea County when Deputy Jesse Ailey answered a 911 call. (Doc. 37 at 3.) Deputy Ailey found

---

[1] The Court has relied on one main principle in setting out the background of the case. In deciding a motion for summary judgment, a court must view the disputed evidence in the light most favorable to the party responding to the motion—here, Plaintiff—and draw all reasonable

1

Decedent, took him into custody, and "transported him to the Rhea County Medical Center where [he] was evaluated and cleared." (*Id.*) The medical center reported that the Decedent was schizophrenic and "that [he] needed to be evaluated by the mobile crisis team." (*Id.*) Deputy Ailey transported the Decedent to Rhea County Sheriff's Department where he was charged with public indecency and placed in a holding cell. (*Id.*) "At approximately 5:05 p.m. Corrections Officer, Shelley Vanzille brought a food tray with a Styrofoam cup to the Decedent in his holding cell." (*Id.* at 4.) Decedent became agitated and expressed that he was ready to leave. (Doc. 59-1 [Decl. of Jesse Goins]; Doc. 59-4 [Decl. of Shelly Vanzile].) Shortly after, at approximately 5:34 p.m., mobile crisis team representative Jacqueline Rush "attempted to evaluate the Decedent with Defendants, Correction Officer Does standing around the Decedent who was placed in a chair nude holding the Decedent in place by holding him down." (Doc. 37 at 4.) "It was noted during his evaluation that the Decedent ha[d] been "screaming in [his] cell and refused to wear [his] gown. [Decedent] had self-inflicted scratches on his stomach and refused to speak. [Decedent] stated 'it's time to go' and was ready to fight officers." (Doc. 64 at 4.) Decedent was diagnosed with "schizophrenia, and drug induced akathisia with the mobile crisis representative issuing a Certificate of Need for the Decedent to be transferred to Moccasin Bend Mental Health Facility." (Doc. 37 at 4; Doc. 64 at 6.) At approximately 6:25 p.m., after being placed back in his holding cell, officers observed the Decedent attempting to choke himself. (Doc. 59-1 [Declaration of Jesse Goins]; Doc. 59-2 [Declaration of Dakota Evans]; Doc. 59-4 [Declaration of Shelly Vanzile].) Decedent "was then removed from his cell and the officers attempted to and later placed Decedent in a restraint chair." (Doc. 59-1 [Declaration of Jesse Goins]; Doc. 59-2 [Declaration of Dakota

---

inferences in that party's favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Evans]; Doc. 59-4 [Declaration of Shelly Vanzile].) "While removing him from the cell, officers noticed that the Decedent appeared to have Styrofoam in his mouth." (Doc. 59-1 [Declaration of Jesse Goins]; Doc. 59-2 [Declaration of Dakota Evans]; Doc. 59-4 [Declaration of Shelly Vanzile].) Officers attempted to remove the Styrofoam out of the Decedent's mouth while he attempted to bite their fingers. (Doc. 37 at 5; Doc. 59-1 [Declaration of Jesse Goins]; Doc. 59-2 [Declaration of Dakota Evans]; Doc. 59-4 [Declaration of Shelly Vanzile].). At approximately 6:35 p.m., Decedent's lips turned blue. (Doc. 59-1 Declaration of Jesse Goins; Doc. 59-2 Declaration of Dakota Evans; Doc. 59-4 Declaration of Shelly Vanzile.) Seven minutes later, Officers Dakota Evans and Jesse Goins removed the Decedent from the restraint chair and began cardiopulmonary resuscitation ("CPR"). (Doc. 37 at 5.) Officer Judy Wright called Rhea County Emergency Medical Services at approximately 6:41 p.m., where they took over CPR and transported the Decedent back to the Rhea County Medical Center. (*Id*.) Decedent eventually developed multiple organ failure and passed away. (*Id*. at 6.)

Plaintiffs allege that this incident "constitutes violations of constitutional and statutory law as set forth hereinafter and negligence and negligence per se and/or recklessness which proximately caused the occurrence making the basis of this action and [the Decedent's] injuries, death, and resulting damage." (*Id*.)

Plaintiffs "bring[] this action for the recovery of compensatory and punitive damages against the Defendants, jointly and severally, for [these] additional [c]onstitutional violation[s], pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988." (*Id*. at 7.) Specifically, Plaintiffs allege that this action arises under the "Sixth, Eighth, Ninth and Fourteenth Amendments to the [U.S.] Constitution." (*Id.* at 1.) Ultimately, Plaintiffs seek punitive, actual, and compensatory damages in an amount not to exceed $5,000,000.00. (*Id.* at 11.)

3

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant

4

summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court is required to, at a minimum, examine the motion to ensure that the movant has met its initial burden. *Id*. In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992). The court must "intelligently and carefully review the legitimacy of …an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* In the absence of a response, however, the Court will not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Id*. at 410. If the court determines that the unrebutted evidence set forth by the moving party supports a conclusion that there is no genuine issue of material fact, the court will determine that the moving party has carried its burden, and "judgment shall be rendered forthwith." *Id.*

## III. <u>DISCUSSION</u>

In response to Plaintiffs' §1983 claims, Defendants argue that they are entitled to summary judgment for the following reasons: (1) because Plaintiffs have not sufficiently pled their claim as to the individual Defendants, (2) because Defendants Evans and Goins did not violate the Decedent's constitutional rights, (3) because there has been no factual basis alleged to support these allegations and thus Plaintiffs' § 1983 claim against Rhea County must fail, (4) because Plaintiffs failed to meet the statute of limitations requirements against John and Jane Doe Defendants, (5) because Rhea County is entitled to immunity pursuant to the Tennessee Governmental Tort Liability Act as to the state law claims asserted against it as they arise out of

5

the same facts and circumstances as the § 1983 claim, and (6) because the state law claims against the individual defendants must be dismissed. (Doc. 60.) The Court will address this argument in four separate parts: (1) failure to state a claim, (2) Rhea County's liability, (3) Officers Jane and John Doe's liabilities, and (4) Plaintiffs' state law claims.

### A. Failure to State a Claim Against Named Defendant Officers

Defendants argue that Plaintiffs have not sufficiently pled their claims as to the individual Officer Defendants. (Doc. 60 at 5.)   Specifically, they argue that "they are not entirely sure what claims are being brought by Plaintiffs against the individual defendants as they first state their claims arise under the Sixth, Eighth, Ninth and Fourteenth Amendments, [Doc. 37 ¶ 1] and later claiming [sic] these Defendants violated the Due Process Clauses of the Fifth and Fourteenth Amendments, [Doc. 37 ¶ 46], as well as the Eighth Amendment [Doc. 37 ¶ 48]." (*Id*. at 6.) Furthermore, they argue that "the only allegations in the Complaint that directly mention actions of either of the individual defendants, state how they were attempting to render aid to the Decedent. [Doc. 37, ¶ 23, 25, 29]." (*Id*. at 7.) As evidence, Defendants rely on the second amended complaint (Doc. 37) to show that Plaintiffs have failed to properly state a claim against the named Defendant Officers.

Plaintiffs have failed to respond and because the Defendants have provided sufficient evidence, the Court sees no genuine dispute of material fact; thus, the Court will address this issue as a matter of law.

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. Although Defendants did not submit a motion to dismiss under Rule 12(b)(6), the Court

can, as demonstrated by Rule 12(d)[2], employ the 12(b)(6) standard in evaluating this issue as a matter of law.

In evaluating a motion to dismiss for failure to state a claim, a court must determine whether a plaintiff's allegations "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Sufficient factual allegations are pleaded when a court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and there is "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether the complaint states a plausible claim on its face, a court must "draw on its judicial experience and common sense." *See id.* at 679. In deciding a Rule 12(b)(6) motion to dismiss, a court must first accept all of the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). All ambiguities must be resolved in the plaintiff's favor. *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993) (citing *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577 (6th Cir. 1992)). Bare legal conclusions, however, need not be accepted as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). After assuming the veracity of factual allegations and construing ambiguities in the plaintiff's favor, the Court must then determine whether those allegations "state a claim to relief that is plausible on its face." *Bell Atl. Corp.* 550 U.S. 570. Sufficient factual allegations are pleaded when a court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and there is "more

---

2  Federal Rule of Civil Procedure 12(d) states,
>If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft* 556 U.S. 678. To determine whether the complaint states a plausible claim on its face, a court must "draw on its judicial experience and common sense." *See id.* at 679

When a § 1983 claim exists, the plaintiff must plead with particular facts. "This [C]ourt has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right." *Terrance v. Northville Reg'l Psychiatric Hosp.,* 286 F.3d 834, 842 (6th Cir. 2002) (citing *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986)).

The Court agrees with Defendants. Plaintiffs have failed to state a claim against the named Defendant Officers Dakota Evans and Jesse Goins in both their individual and official capacities, which as articulated above is required under § 1983.[3] Instead, Plaintiffs asserts bare bone allegations in the complaint. For example, Plaintiffs state, "[t]he conduct of the Defendants toward the decedent was so blatantly inappropriate as to show evidence of intentional maltreatment and deliberate indifference to his care, in violation of the Due Process Clauses of the Fifth Amendment and Fourteenth Amendment of the United States Constitution." (Doc. 37 ¶ 46.) Here, Plaintiffs' reference to the "the Defendants" is vague and does not show what either Defendant Officer Dakota Evans or Defendant Officer Jessie Goins did to violate the asserted right in their official or individual capacity. Another example occurs in the complaint where Plaintiffs asserts, "[P]laintiff, therefore, brings this action for the recovery of compensatory and punitive damages against the

---

[3] Defendants raised the issue that Plaintiff has failed to state claims for which relief can be granted in their response to the second amended complaint (Doc. 37). (Doc. 44 at 15.)

8

Defendants, jointly and severally, for these Constitutional violations, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988." (*Id.*) Here, as in the previous example, Plaintiffs make general allegations about the named Defendant Officers without discussing what violation each officer committed. The Court is unable to discern what the actual allegations against the named Defendant Officers are and how their conduct allegedly led to a violation of Decedent's rights. Thus, Plaintiffs have failed to state a claim for which relief can be granted against the named Defendant Officers Dakota Evans and Jesse Goins in both their individual and official capacities. Therefore, the Court will **GRANT** Defendant Officers Dakota Evans and Jesse Goins summary judgment in both their individual and official capacities.

### B. Rhea County's Liability

Defendants argue that Plaintiffs' §1983 claims against Rhea County must fail because "Plaintiff[s] have not alleged any violation of a specific policy or custom of the Rhea County Sheriff's Department nor have they show [sic] that the county should have been on notice of a deficiency in training but ignored it." (Doc. 60 at 12.) Furthermore, they argue that Plaintiffs "have not shown that a mentally ill inmate attempting to swallow a cup is a recurring situation that presents obvious potential for a constitutional violation." (*Id.*)

After reviewing the second amended complaint that Defendants use for evidence, the Court sees no genuine dispute of material fact; thus, the Court will address this issue as a matter of law.

It is well understood that a local government cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Dept of Soc. Servs. of City of New York*, 436 U.S. 658, 691-95 (1978). However, a local government can be held liable for failure to train if it maintained a policy or custom that violated a plaintiff's rights. In *Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir. 2005), the Court of Appeals for the Sixth Circuit stated,

> [o]nly where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a . . . "policy or custom" that is actionable under § 1983. Mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove liability.

This "deliberate indifference" standard allows plaintiffs to present evidence of prior instances of ignored unconstitutional conduct. Furthermore, plaintiffs can meet this deliberate indifference standard if they show "that the [c]ounty has failed to train its employees to handle recurring situations presenting an obvious potential for such violation." *Harvey v. Campbell Cnty. Tenn.*, 453. App'x 557, 562-563 (6th Cir. 2011).

Plaintiffs have failed to meet that "deliberate indifference" standard. Instead, the second amended complaint makes general assertions about Rhea County's failure to train its officers. For example, they assert the following:

- that Correction Officers Dakota Evans and Jesse Goins were not properly trained in monitoring and evaluating mentally ill inmates;

- that Correction Officers Dakota Evans and Jesse Goins were not properly trained in administering medical attention to mentally ill inmates;

- that Rhea County is responsible for the training of all officers in all departments, including but not limited to the Corrections Officers, in the proper protocol for the monitoring, medical training and treatment of the mentally ill inmates in accordance with the statutes, ordinances, regulations, customs, and usage of all Rhea County Sheriff's Department, the County of Rhea, and the State of Tennessee; and

- that Rhea County failed to properly hire, instruct, supervise, and control the deputies and officers in their employment particularly with regard to the monitoring, treatment and medical training of the mentally ill.

(Doc. 37 at 8.) Plaintiffs' second amended complaint lacks a showing of any prior instances of unconstitutional conduct by Rhea County or recurring situations that shows the county failed to train its officers. Furthermore, Plaintiffs have failed to point to a county policy or custom. Thus,

10

as a matter of law, Plaintiffs have failed to satisfy the deliberate indifference standards and the Court will **GRANT** Defendants' motion for summary judgment against Rhea County and the Court will **DISMISS** Plaintiffs' §1983 claims against Rhea County.

### C. Officers Jane and John Doe's Liability

Defendants argue that the statute of limitations has run against Jane or John Doe Officers because Plaintiff has failed to "amend[] their complaint to substitute in a named party for the John or Jane Doe Officers." (Doc. 60 at 14.) They argue Plaintiff's statute of limitations "began to run on May 28, 2019[,] and accrued on May 28, 2020," and even if the complaint was amended it would violate the statute of limitations. (*Id*.)

Here, there is no genuine dispute of material fact. Thus, the Court will address this issue as a matter of law.

> It is familiar law that "John Doe" pleadings cannot be used to circumvent statutes of limitations, because replacing a "John Doe" with a named party in effect constitutes a change in the party sued. Such an amendment may only be accomplished when all of the specifications of Fed.R.Civ.P. 15(c) are met.

*Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (quoting *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1075 (2d Cir. 1993). Furthermore, Federal Rule of Civil Procedure 15(c) governs the relation back of amendments. The rule states that relation back occurs if,

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Here, the statute of limitations for bringing this suit against the John Doe Defendants has expired. Plaintiff filed suit against the Jane and John Doe Defendants on May 28, 2020, a year after the

11

incident occurred on May 19, 2019. Plaintiff has not amended their complaint within the one-year statute of limitations period. Thus, as a matter of law, Plaintiff is no longer entitled to amend their complaint to name the John and Jane Doe Defendants. Thus, the Court will **GRANT** Defendants' motion for summary judgment regarding the Jane and John Defendants and the Court will **DISMISS** Plaintiffs' statute of limitations claims against the Jane or John Doe Officers.

### D. Plaintiffs' State Law Claims

The dismissal of all of Plaintiffs' federal-law claims leads to the question of the Court's subject-matter jurisdiction over the remaining state-law claims against individual Defendants Dakota Evans and Jesse Goins. State-law claims brought in a federal-question case can only be heard through the exercise of supplemental jurisdiction. 28 U.S.C. § 1367. The exercise of federal supplemental jurisdiction is discretionary. District courts may decline to exercise supplemental jurisdiction over a state-law claim if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In making its discretionary decision, a district court should weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *accord Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

The third rationale of § 1367(c) applies here because the Court will dismiss all of the claims over which it has original jurisdiction. *See supra* § III(A)–(D). When all federal claims have been dismissed, the preferred disposition of state-law claims is dismissal. *Gamel v. City of Cincinnati*,

12

Case 1:20-cv-00133-CLC-CHS   Document 72   Filed 07/27/22   Page 12 of 13   PageID #: 354

625 F.3d 949, 952 (6th Cir. 2010) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996)). Therefore, the Court will **DISMISS** Plaintiffs' state law claims **WITHOUT PREJUDICE.**

IV. **CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendants' motion for summary judgment (Doc. 59). Therefore, all of Plaintiffs claims against Defendants will be dismissed with prejudice, except for Plaintiffs' state law claims.

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**